# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JOHN WALLACE**, substituted on behalf   :
of Linda Wallace, deceased              :
                                            :
            **Plaintiff**          :
      **v.**                          :     **3:12-CV-1905**
                                            :     **(JUDGE MARIANI)**
**NOVARTIS PHARMACEUTICALS CORP.** :
                                            :
           **Defendant**       :

## **MEMORANDUM OPINION**

### I. Introduction

Before the Court is Defendant's Motion to Dismiss (Doc. 67). For the reasons set forth below, the Court will grant Defendant's motion.

### II. Background

On January 18, 2006, Linda Wallace ("Mrs. Wallace") filed this personal injury action against Defendant Novartis Pharmaceuticals Corporation ("Novartis"), arising from her use of Aredia and Zometa to treat her breast cancer. (Complaint ("Compl."), Doc. 1, ¶ 13). She claimed that as a result of taking Aredia and Zometa, she developed osteonecrosis of the jaw and brought this suit in federal court on diversity grounds. (*Id.* at ¶¶ 5, 14).

Mrs. Wallace died on February 14, 2007. (Suggestion of Death, Doc. 68-1, Ex. 1). Former counsel, Russel Beatie, filed the Suggestion of Death on October 26, 2007.[1] (*Id.*). In

---

[1] On March 2, 2009, Plaintiff moved to substitute Osborn Law P.C. for Beatie and Osborn LLP because Russell Beatie and Daniel Osborn had "dissolved [their partnership] on or around December 31, 2008," and Plaintiff

the Suggestion of Death, he stated that "John Wallace, the personal representative of Linda

Wallace's estate, will be substituted in this action so that Linda Wallace's claims survive and

the action on her behalf may proceed." (*Id.*). On January 8, 2008, Attorney Beatie filed a

Motion to Substitute (Doc. 68-2, Ex. 2), which has been reproduced below in its entirety:

> The personal representative of Linda Wallace moves the Court to substitute
> him as Plaintiff in this civil action as follows:
>
> Linda Wallace:
>
> 1. Linda Wallace passed away on February 14, 2007. A Suggestion Of
>    Death was filed on October 26, 2007 (DE 745).
>
> 2. Under Pennsylvania law, the claim of Linda Wallace survives to her
>    personal representative.
>
> 3. Pursuant to Ms. Wallace's Last Will and Testament, her husband, John
>    Wallace, has been named the Executor of Ms. Wallace's estate.
>
> 4. Based on the foregoing, the Court should enter an order substituting John
>    Wallace as the personal representative of the Estate of Linda Wallace,
>    deceased, in place and instead of Linda Wallace.

The Multi-District Litigation ("MDL") Court granted the Motion to Substitute. (Doc. 68-3, Ex.

3). Also, as late as February 16, 2011, John Wallace confirmed that he was the "formal

personal representative of [Mrs. Wallace's] estate." (J. Wallace Dep., Doc. 68-4, at 13:10-

12). He, however, did not receive Letters Testamentary from the Commonwealth of

Pennsylvania until May 2, 2012. (Petition for Grant of Letters, Doc. 68-5).

---

had chosen to proceed with Osborn Law, P.C. to represent her going forward. (Doc. 11-5 at ¶¶ 2, 6). Ultimately,
the motion was granted. (Doc. 11-7).

The Case Management Order ("CMO") from the MDL Court set forth detailed

requirements when filing Suggestions of Death and Motions to Substitute. It stated, in

pertinent part:

> A. Suggestion of Death. Within sixty (60)[2] days of entry of this Order or the death of a plaintiff, whichever is later, plaintiff's counsel shall file a "Suggestion of Death" that identifies the plaintiff and describes the time, date, and circumstances of the plaintiff's death.
>
> B. Timing of Motion for Substitution. The ninety (90) day time period for filing a Motion for Substitution, as required by Fed. R. Civ. P. 25(a), will commence upon the filing of a Suggestion of Death or upon the passage of 30 days from the entry of this Order, whichever is later.
>
> C. Contents of Motion for Substitution.
>
> 1. The Motion for Substitution shall identify the proposed substitute plaintiff by name and shall describe why the proposed substitute plaintiff is a "proper" party and why the claim has not been extinguished under the applicable state survivorship statute or applicable state common law.
>
> 2. In the event that applicable state law requires the opening of an estate and the appointment of a personal representative to pursue the claims of a deceased plaintiff, plaintiff's counsel shall initiate or cause to be initiated proceedings to open an estate and/or obtain the appointment of a personal representative for plaintiff within thirty (30) days of the plaintiff's death or thirty (30) days from entry of this Order, whichever is later.
>
> . . .
>
> 3. Plaintiff's failure to comply with the provisions of this Section, including the requirement that an Order appointing the substitute plaintiff as the decedent's personal representative be filed prior to remand where the Court grants a provisional substitution, will entitle Defendant to request a dismissal of plaintiff's action with prejudice in accord with Fed. R. Civ. P. 25(a).

---

[2] This sixty-day deadline was in effect from August 2006 until April 2013, when it was increased to ninety days. (CMO, Doc. 68-6, at 7, 10).

(CMO, Doc. 68-6, Section V.A-C.).

On August 5, 2013, the Court held a *Daubert* hearing on Plaintiff's proposed experts. At the close of the hearing, counsel for Novartis orally informed the Court that Defendant would soon file a motion to abate the action. On August 9, 2013, Novartis filed its Motion to Dismiss (Doc. 67), requesting various forms of relief, including a Petition for Abatement under 20 PA. CONS. STAT. § 3373, a Motion to Vacate the MDL Order which had granted the defective and untimely Motion to Substitute entered in 2007, and a Motion to Dismiss under both FED. R. CIV. P. 25(a) and the CMO.

## III. Analysis

### a. Failure to Comply with the MDL Court's CMO

Rule 25(a) and the CMO govern the procedures required to substitute a party upon the death of a plaintiff. The specific provisions of the CMO at issue here are reproduced below:

A. Suggestion of Death. Within sixty (60) days of entry of this Order or the death of a plaintiff, whichever is later, plaintiff's counsel shall file a "Suggestion of Death" that identifies the plaintiff and describes the time, date, and circumstances of the plaintiff's death.

B. Timing of Motion for Substitution. The ninety (90) day time period for filing a Motion for Substitution, as required by Fed. R. Civ. P. 25(a), will commence upon the filing of a Suggestion of Death or upon the passage of 30 days from the entry of this Order, whichever is later.

C. Contents of Motion for Substitution.

4

1.  The Motion for Substitution shall identify the proposed substitute plaintiff by name and shall describe why the proposed substitute plaintiff is a "proper" party and why the claim has not been extinguished under the applicable state survivorship statute or applicable state common law.

2.  In the event that applicable state law requires the opening of an estate and the appointment of a personal representative to pursue the claims of a deceased plaintiff, plaintiff's counsel shall initiate or cause to be initiated proceedings to open an estate and/or obtain the appointment of a personal representative for plaintiff within thirty (30) days of the plaintiff's death or thirty (30) days from entry of this Order, whichever is later.

    . . .

3.  Plaintiff's failure to comply with the provisions of this Section, including the requirement that an Order appointing the substitute plaintiff as the decedent's personal representative be filed prior to remand where the Court grants a provisional substitution, will entitle Defendant to request a dismissal of plaintiff's action with prejudice in accord with Fed. R. Civ. P. 25(a).

(CMO, Doc. 68-6, Section V.A-C.).

Plaintiff failed to meet virtually every requirement set forth above. Mrs. Wallace died

on February 14, 2007. (Suggestion of Death, Doc. 68-1, Ex. 1). Plaintiff's counsel did not file

a Suggestion of Death until October 26, 2007 (*id.*), well past the sixty-day deadline. Thus,

Plaintiff violated provision V.A. of the CMO. Because of Plaintiff's counsel's tardiness in

filing the Suggestion of Death, the Motion to Substitute was also untimely (Doc. 68-2, Ex. 2),

thus violating provision V.B. of the CMO. Neither did the Motion to Substitute "describe why

the proposed substitute plaintiff is a 'proper' party and why the claim has not been

extinguished under the applicable state survivorship statute." Finally, John Wallace did not

obtain Letters Testamentary to Mrs. Wallace's estate until May 2, 2012, more than five

years after Linda Wallace's death. (Petition for Grant of Letters, Doc. 68-5). Thus, Plaintiff's

counsel failed to "initiate or cause to be initiated proceedings to open an estate and/or

obtain the appointment of a personal representative for plaintiff within thirty (30) days of the

plaintiff's death," as required by "applicable state law" in violation of provision V.C.2 of the

CMO. As such, according to provision V.C.3 of the CMO, these failures "entitle Defendant to

request a dismissal of plaintiff's action with prejudice in accord with Fed. R. Civ. P. 25(a)."

### b. Failure to Comply with Rule 25(a)

Rule 25(a) provides the following with respect to substitution in the event of the

death of a party when the claim is not extinguished:

> If a party dies and the claim is not extinguished, the court may order
> substitution of the proper party. A motion for substitution may be made by any
> party or by the decedent's successor or representative. If the motion is not
> made within 90 days after service of a statement noting the death, the action
> by or against the decedent must be dismissed.

Before addressing whether Plaintiff duly complied with Rule 25(a), the Court first will

resolve a dispute between the parties as to who constitutes a "proper party" under Rule

25(a). Both parties cite to *In re Baycol Products Litigation* for different propositions. 616 F.3d

778 (8th Cir. 2010). Defendant cites to *Baycol* for the principle that "state law governs *who*

can be a 'representative' or 'successor,' and therefore, who can qualify as a proper party for

substitution under Rule 25(a)(1)."[3] *Id.* at 785 (emphasis in original). Plaintiff does not dispute

---

[3] As the Eighth Circuit explained, "Rule 25(a)(1) is a procedural rule. . . . It does not provide for the survival of rights or liabilities but merely provides the method by which the original action may proceed if the right of action survives." *Id.* at 785 (internal citations and quotation marks omitted). Elsewhere, the Eighth Circuit concluded, "The question of *who* is a proper party is a substantive issue, for which we must rely upon state law. In

6

this principle, but instead, points to language elsewhere in *Baycol* that says, "under certain circumstances, a person may be a 'successor' under Rule 25(a)(1) if she is . . . (2) named in a will as the executor of the decedent's estate, even if the will is not probated, *see McSurely [v. McClellan]*, 753 F.2d [88] at 98 [D.C. Cir. 1985]; . . ." *Id.* at 784.[4]

Having read *McSurely*, cited in *Baycol*, the Court concludes that it does not apply to this case, at least not for the conclusion that Plaintiff advocates. Plaintiff argues that even though Linda Wallace's estate was not probated until May 2, 2012, John Wallace was a "successor" under Rule 25(a)(1). In *McSurely*, the decedents were the defendants who had named their wives as their executors but whose wills were never probated. The defendant-widows argued that they could not be proper parties for substitution, but the Court rejected this argument because it would be inequitable for the *plaintiffs* to "institute[e] machinery in order to produce some representative *ad litem*" for the opposing parties. *McSurely*, 753 F.2d at 98. More importantly, the *McSurely* court did not discuss whether the widows were proper parties for substitution under applicable state law.[5]

The Court concludes that Pennsylvania law determines whether John Wallace is the "proper party" for substitution and that under Pennsylvania law, he was not a "personal

contrast, the method by which one must proceed as the successor to establish a right to substitution is procedural, and is governed by federal law." *Id.* at 787-88 (emphasis in original).

[4] Plaintiff also cites to *Heath v. Martin* for the same proposition. No. 4:CV-04-2275, 2012 WL 610965, at *3 (M.D. Pa. Feb. 24, 2012). *Heath* merely repeated the language of *Baycol* without deciding the case on the merits, so the Court will limit its analysis to the interpretation of *Baycol*.

[5] Plaintiff further cites to cases which held that "the addition of the word 'successor' to the rule means that a proper party need not necessarily be the appointed executor or administrator of the deceased party's estate." *Sinito v. United States Dep't of Justice*, 176 F.3d 512, 516 (D.C. Cir. 1999); *see also Fariss v. Lynchburg Foundry*, 769 F.2d 958 (4th Cir. 1985). However, both cases involved causes of action based on federal law rather than state law. *Sinito*, 176 F.3d 512 (FOIA); *Fariss*, 769 F.2d 958 (ADEA).

7

representative" of his late-wife's estate at the time Attorney Beatie filed the Motion to
Substitute.

Having resolved this issue, the Court will address whether Attorney Osborn violated
the requirements of Rule 25(a)(1). As stated before, Mrs. Wallace died on February 14,
2007, a Suggestion of Death was filed on October 26, 2007, and a Motion to Substitute was
filed on January 8, 2008. On its face, the substance of the January 8, 2008 Motion to
Substitute complied with Rule 25(a). However, the Order granting the Motion to Substitute
was based on a misrepresentation made by then-counsel, Mr. Beatie, that John Wallace
was the "personal representative" of Linda Wallace's estate.[6] As such, Novartis has
requested that this Court vacate the Order granting the Motion to Substitute. If the Court
does so, the result would be that no proper party has been substituted for Linda Wallace
since the Suggestion of Death was filed on October 26, 2007 over six years ago.

---

[6] Though Attorney Beatie filed the Motion to Substitute, his representations on behalf of John Wallace
and his then-firm, Beatie and Osborn LLP, are binding on his then-partner, Attorney Osborn.

[T]he scope of a general partner's agency to act on behalf of the partnership is ordinarily limited
to matters undertaken in furtherance of the partnership's interest as a whole. *See* 15 PA. CONS.
STAT. § 8321(a) ("Every partner is an agent of the partnership for the purpose of its business and
the act of every partner . . . for apparently *carrying on in the usual way the business of the
partnership* of which he is a member binds the partnership [.] (emphasis added)). *See generally*
59A AM. JUR. 2D PARTNERSHIP § 207 ('Every partner . . . is . . . a general and authorized agent of the
firm and of all the partners, for all purposes within the scope and objectives of the
partnership.'").

*Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 480 (Pa. 2009).

The Court finds that the Motion to Substitute was defective, and so, the Order granting the Motion was improper. The Court will, therefore, vacate Magistrate Judge Brown's previous Order.[7]

Attorney Osborn protests that he is not a wills and estates lawyer, so he advised all of his clients to find attorneys to help them comply with their local probate laws. Be that as it may, it was his responsibility to ensure that his clients became proper legal representatives in their cases. The law is well-established that "clients must be held accountable for the acts and omissions of their attorneys." *United States v. Minor*, 457 F. App'x 119, 122 (3d Cir. 2012) (quoting *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396–97, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)); *see also Brodie v. Gloucester Twp.*, No. 12-2766, 2013 WL 3768341, -- F. App'x -- (3d Cir. July 19, 2013) ("the question is not whether the client did all he reasonably could in policing the conduct of his attorney, but rather if the attorney, as his agent, did all he reasonably could to comply with the deadline.") (internal citations and quotation marks omitted).

Finally, Attorney Osborn argues that Novartis waived its right to assert a Rule 25(a)(1) motion because it knew as early as 2008 that John Wallace was not the legal representative of Linda Wallace's estate. (Doc. 73, at 10) ("the information available to Novartis to support its recent motion was available to it in June 2008. . ."). He, however, cites to no evidence in the record to show what occurred in June 2008 that should have put

---

[7] The Court also notes that Attorney Osborn did not move for an extension of time to file an Amended Motion to Substitute with this Court.

9

Novartis on notice of Attorney Beatie's defective substitution. Moreover, in light of John Wallace's 2011 deposition testimony in which he confirmed that he was the "formal personal representative" of Linda Wallace's estate (J. Wallace Dep., Doc. 68-4, at 13:10-12), the Court is hard-pressed to find that Novartis should have divined that John Wallace was not the "proper party" under Rule 25(a) to substitute for Linda Wallace's estate. Novartis assumed the truth of plaintiff's counsel's filings, as it was entitled to do. *See* FED. R. CIV. P. 11(b).

As shown above, Mr. Osborn failed to comply with Rule 25(a) and his failure cannot be attributed to excusable neglect. Unfortunately, his client must bear the consequences of Attorney Osborn's neglect. For these reasons, this case should be dismissed with prejudice under Rule 25(a).

## c. Petition for Abatement

Under Pennsylvania's survivorship law, "[a]ll causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." 42 PA. CONS. STAT. § 8302. "With the survival statute, . . . the action survives and simply continues in the decedent's personal representative." *Salvadia v. Ashbrook*, 923 A.2d 436, 439-440 (Pa. Super. Ct. 2007).

"Pennsylvania law provides that suit may only be brought by the personal representative of the decedent, meaning the administrator or executor of the estate." *Knit With v. Knitting Fever, Inc.*, 742 F. Supp. 2d 568, 588, n.11 (E.D. Pa. 2010). "For an

10

executor or administrator to be appointed to administer the estate, a petition would have to be made for a grant of letters of administration or letters testamentary pursuant to 20 PA. CONS. STAT. §§ 3151 and 3155." *Id.*; *see also Gee v. CBS, Inc.*, 471 F. Supp. 600, 615-16 (E.D. Pa. 1979) ("a crucial limitation on the survival statute is contained in 20 PA. CONS. STAT. §§ 3372 and 3373; suit may only be brought by the personal representative of decedent, meaning (under 20 PA. CONST. STAT. § 102),[8] the executor or administrator of the estate.").[9] Thus, simply being named as the executor of his wife's estate in her will did not make John Wallace a "personal representative" under Pennsylvania law.

> If a plaintiff or petitioner in any action or proceeding . . . dies and a personal representative is not appointed within one year after a suggestion of such death is filed in the action or proceeding, any defendant or respondent may petition the court to abate the action as to the cause of action of the decedent. . . . The court shall abate the action as to the cause of action of the decedent if the delay in taking out letters[10] is not reasonably explained.

20 PA. CONS. STAT. § 3375.[11] "The use of 'shall' in the context of this statute reveals the legislature's mandatory directive to the court, *i.e.*, the court *must* abate the action *if* the plaintiff fails to present a reasonable explanation for the delay in taking out letters of

---

[8] The Decedents, Estates and Fiduciaries Code defines "personal representative" as "an executor or administrator of any description." 20 PA. CONS. STAT. § 102.

[9] *Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props., LLC*, 435 F.3d 136, 140 (2d Cir. 2006) ("Similarly, we find that the GSIs may not maintain their claim for negligence, which is nothing more than a survival action, given that they are not personal representatives and do not have the putative powers possessed by those carrying letters testamentary to prosecute such actions.") (citing *Gee* in deciding issue of Pennsylvania law).

[10] The Decedents, Estates and Fiduciaries Code defines "letters" as "letters testamentary or letters of administration of any description." 20 PA. CONS. STAT. § 102.

[11] Attorney Osborn argues that Pennsylvania's one-year limitation period is a procedural rule, and "a federal court, in a diversity case, must apply federal procedural law." (Doc. 73, at 7). However, the Supreme Court has held that "[f]or purposes of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), for example, *statutes of limitations are treated as substantive*." *Jinks v. Richland Cnty*, 538 U.S. 456, 465, 123 S. Ct. 1667, 1672, 155 L. Ed. 2d 631 (2003) (emphasis added).

administration." *Salvadia*, 923 A.2d at 441 (emphasis in original). Thus, "even a liberal interpretation of section 3375 reveals that the legislature did not intend the court to consider prejudice in its determination of whether or not to grant a petition for abatement." *Id.* at 443.

Assuming for the sake of analysis that the Suggestion of Mrs. Wallace's Death was timely on October 26, 2007 (which it was not), the one-year statute of limitations under § 3375 expired on October 26, 2008. Yet, John Wallace did not obtain Letters Testamentary until May 2, 2012. To explain the delay, Attorney Osborn submitted an affidavit that he had submitted previously in a related action. (Osborn Aff., Doc. 73-4). In that affidavit, he states: "[i]n using the phrase 'personal representative' [in the motion to substitute], we did not intend to suggest that the proposed plaintiff had been formally appointed by a court." (*Id.* at ¶ 9). "In those instances where formal court appointment had occurred, we attached Letters Testamentary or their equivalent if we had them." (*Id.* at ¶ 10). "In those instances where formal court appointment had not occurred, we asked our clients to obtain Letters Testamentary or their equivalent," because Attorney Osborn did not practice trusts and estates law. (*Id.* at ¶ 11). "Once the appropriate documents were obtained, we filed . . . a Notice of Filing attaching those documents." (*Id.*). Attorney Osborn concludes his affidavit by stating, "we did not use the phrase 'personal representative' as a term of art. We were simply identifying a proposed plaintiff to step into the shoes of the decedent and continue the lawsuit." (*Id.* at ¶ 15).

The Court finds these excuses insufficient. The CMO clearly outlined the procedures that were to be followed when filing Motions to Substitute. Even if Attorney Osborn is unfamiliar with trusts and estates law, he is still obligated to ensure that his clients meet all of the Court's requirements.[12] Furthermore, Novartis points out that Attorney Osborn did not follow the approach outlined in Attorney Osborn's affidavit; that is, after Mr. Wallace finally obtained letters testamentary, Attorney Osborn never filed a "Notice of Filing attaching those documents." (Novartis Reply Brief, Doc. 74, at 5, n.3) ("But the Osborn firm made no such later filing in this case when Mr. Wallace finally obtained his letters testamentary!").

Additionally, the Court notes that another MDL case reached the same conclusion on the issue of abatement under Pennsylvania law. *In re Aredia And Zometa Products Liability Litigation (Spiese)*, No. 3-06-MD-1760, 2013 WL 2317743 (M.D. Tenn., May 28, 2013). The Court sees no reason to depart from this case.

Finally, the Court rejects Attorney Osborn's reliance on *Berdine v. Washington Hosp.*, 17 Pa. D. & C.3d 26, 30 (Pa. Com. Pl. 1980) for the same reasons set forth in *Spiese* (see below) and for the additional reason that *Salvadia* requires strict adherence to the one-year abatement statute. (Doc. 68-9, Ex. 9, at 18) ("First, there is no indication that the plaintiffs in . . . *Berdine* misrepresented the facts in those cases.).

---

[12] To the extent that Attorney Osborn claims the Motion to Substitute contained no misrepresentations, the Court rejects it. The Motion specifically stated that "[u]nder Pennsylvania law, the claim of Linda Wallace survives to her personal representative." (Doc. 68-2, Ex. 2, ¶ 2). "Pursuant to Ms. Wallace's Last Will and Testament, her husband, John Wallace, has been named the Executor of Ms. Wallace's estate." (*Id*. at ¶ 3). Therefore, "the Court should enter an order substituting John Wallace as the personal representative of the Estate of Linda Wallace." (*Id*. at ¶ 4). Clearly, the Motion was meant to induce the Court to believe that paragraphs 2 and 3 worked in conjunction to produce the conclusion that John Wallace was the "personal representative," in the legal sense, of Linda Wallace's estate. To argue otherwise is disingenuous.

*Berdine* is distinguished from this case because, in *Berdine*, although the letters of administrative [*sic*] were sought outside the one-year limitations period under § 3375, the required letters of administration were obtained near contemporaneously with the actual filing of the suggestion of death, i.e., one day lapsed between the two. In this case, however, the letters of administration were not obtained for more than five and one-half (5 ½) years after the suggestion of death was filed. Counsel will not be permitted to play "gotcha" with NPC in an eleventh hour effort to circumvent Pennsylvania law, Rule 25, and the CMO.

(*Id.* at 19).

Thus, Attorney Osborn's excuses do not "reasonably explain" the delay in John

Wallace's appointment as his late wife's "personal representative" under Pennsylvania law,

and the Court must abate this action according to § 3375. Therefore, on this basis alone,

this case should be dismissed with prejudice.

### d. *Poulis* Factors

When considering whether to dismiss a case because of a party's repeated dilatory

conduct, a Court must consider:

(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

### (1) The Extent of the Party's Personal Responsibility

In *Poulis*, the Third Circuit stated "[t]here has been no suggestion by any party or by

the district court that the Poulis plaintiffs are personally responsible for the late pretrial

14

statement, which was the basis for the dismissal. Indeed, [Attorney] Retos has acknowledged the delays were his responsibility." 747 F.2d at 868.

Although the Court is reluctant to attribute personal responsibility to John Wallace for all of his attorney's late filings, according to Attorney Osborn, "[i]n those instances where formal court appointment had not occurred, we asked our clients to obtain Letters Testamentary or their equivalent." (Osborn Aff., Doc. 73-4, at ¶ 11). If this is the case, then John Wallace also bears responsibility for failing to obtain Letters Testamentary until May 2, 2012, more than five years after his wife's death. To date, neither Mr. Wallace nor Attorney Osborn has explained this inordinate delay in probating Linda Wallace's estate. Also, as late as February 16, 2011, John Wallace confirmed that he was the "formal personal representative of [Mrs. Wallace's] estate," when this was untrue. (J. Wallace Dep., Doc. 68-4, at 13:10-12).

Moreover, the Third Circuit cautioned that "the Poulis' lack of responsibility for their counsel's dilatory conduct is not dispositive, because a client cannot always avoid the consequences of the acts or omissions of its counsel." 747 F.2d at 868. Therefore, to the extent that John Wallace's attorneys made misrepresentations to the Court that Mr. Wallace was the legal personal representative of Mrs. Wallace's estate, he cannot escape dismissal.

### (2) Prejudice to the Adversary

Even excluding the other cases contained in the MDL, the Court finds that Novartis has had to bear significant costs in litigating this particular case. Linda Wallace filed this

case on January 18, 2006, and Novartis has been defending it for nearly eight years. It engaged in significant motions practice at the MDL level before this case was remanded to the Middle District of Pennsylvania.

The undersigned became involved only last year, and within that time, Novartis has expended considerable time and resources in litigating this case. On August 5, 2013, this Court held a *Daubert* hearing on August 5, 2013 which spanned seven-and-a-half hours. Prior to the hearing, Novartis filed briefs in opposition to each of Plaintiff's six experts. Following the hearing, Novartis filed the pending Motion to Dismiss (Doc. 67) and supporting brief.

The time that Novartis has expended on the merits of this case has been substantial, when in fact, a proper party was never substituted for Linda Wallace. Novartis has been prejudiced by being exposed to prolonged and unnecessary litigation.

### (3) History of Dilatoriness

The CMO clearly cautions plaintiffs that failure to comply with its provisions "will entitle Defendant to request a dismissal of plaintiff's action with prejudice in accord with FED. R. CIV. P. 25(a)." (CMO, Doc. 68-6, Section V.C.3). The provisions in the CMO pertaining to substitution were not mere formalities. Because of the nature of the plaintiffs' conditions in the MDL cases, strict rules governing substitution were necessary as the likelihood was high that many of the plaintiffs would die from their cancers before the conclusion of their cases. In fact, in May 2011, Magistrate Judge Brown wrote that he was

16

"concerned that there appears to be a growing problem with substitution when a plaintiff dies." (Doc. 68-7, Ex. 7). As a result, he directed the Plaintiffs' Steering Committee "to remind all counsel of the requirements of the scheduling order concerning substitution when a Plaintiff dies, and to insure that when motions to substitute are filed that they include appropriate documentation from the state court that the person designated for substitution is appropriately qualified under state law." (*Id.*). In fact, other courts have commented on Attorney Osborn's dilatory conduct.

> The Court finds the level of practice exhibited by Plaintiff's counsel to fall woefully below the level of practice expected of practitioners before this Court. Further, the Court finds disconcerting the dilatory nature of the prosecution by Plaintiff's counsel and his lack of candor to the Court. The Court reminds Plaintiff's counsel, as an officer of the court, that he has obligations to his client and this Court to be forthcoming and to prosecute matters diligently.

*Ackerman v. Novartis Pharms. Corp.*, No. 5:13-cv-51-Oc-22PRL (M.D. Fla. June 13, 2013)

(Doc. 74-8, Ex. H);[13] *see* Section IV *infra*.

Attorney Osborn cannot plead ignorance of the requirements expected of him after Linda Wallace died. He was fully aware of his obligations regarding substitution and failed to meet them, as described above.

Yet, even in the relatively brief period of time that the undersigned has presided over this case, Attorney Osborn has displayed a history of dilatoriness. Attorney Osborn has

---

[13] "This was the third time in the very brief litigation that the Court had to issue an order to show cause or an order of compliance" because of Attorney Osborn's "failure to comply with the Court's deadlines and Local Rules. (See (Doc. Nos. 22 & 27)). The complete disregard of Plaintiff's counsel to meet deadlines is well documented." (*Id.* at 2).

never timely filed any brief in this Court and has instead requested extensions for every deadline imposed on him.

He requested an extension of time to file a response to Defendant's Motion for Additional *Daubert* Briefing (Doc. 39), which Novartis opposed (Doc. 40). The Court granted the extension of time over Defendant's objection. (Doc. 42). Then, after the Court scheduled the *Daubert* hearing for August 5, 2013, Attorney Osborn filed a Motion for Extension of Time to File and Motion to Adjourn *Daubert* Hearing (Doc. 61). The Court granted the motion in part and denied it in part. (Doc. 62). It granted him additional time to file a Reply Brief to Defendant's Objections to Plaintiff's proposed experts, but denied the request to postpone the *Daubert* hearing. In so denying, the Court wrote:

> Given that this Court scheduled the *Daubert* hearing by Order dated June 20, 2013 (Doc. 45), Plaintiff did not file his motion to postpone until over a month later, and Plaintiff's counsel's basis for postponement is that he will be "unavailable on [August 5, 2013] as he will be attending to other matters in California," the motion is denied. Absent compelling reason, there will be no postponements of the August 5, 2013 *Daubert* hearing.

(Doc. 62, at ¶ 1(b)(i)). In that same Order, the Court stated, "[t]he parties are reminded that all filings with this Court must comply with the Local Rules, which require that all motions be accompanied by a Certificate of Concurrence or Non-Concurrence (LR 7.1) and a Proposed Order (LR 5.1(g))," because Plaintiff's motion for extension of time had not complied with the Local Rules of the Middle District of Pennsylvania. (*Id.* at ¶ 2).[14]

---

[14] Plaintiff's first Motion for Extension of Time likewise did not contain a Certificate of Concurrence or Proposed Order. (Doc. 39). After the second time Plaintiff failed to attach a Certificate of Concurrence or Proposed

Then, after Defendant filed its Motion to Dismiss (Doc. 67), Attorney Osborn

requested an extension of time to file a response. (Doc. 71). The Court granted the motion

with the following caveat:

> The Court is granting Plaintiff's motion despite his repeated failure to comply
> with the Local Rules. Plaintiff's motion was not accompanied by a Certificate
> of Non-Concurrence or a Proposed Order, as required by LR 5.1(g) and 7.1.
> Plaintiff was reminded of these requirements in the Court's previous Order of
> July 23, 2013 (Doc. 62) in which the Court said, "all filings with this Court
> must comply with the Local Rules, which require that all motions be
> accompanied by a Certificate of Concurrence or Non-Concurrence (LR 7.1)
> and a Proposed Order (LR 5.1(g))." (Id. at ¶ 2). Plaintiff is on notice that
> failure to adhere to these requirements in any subsequent motions to the
> Court shall result in denial of such motions without prejudice.

(Doc. 72, at ¶ 3). The Court would have been well within its authority to deny any of

Plaintiff's motions for extensions of time because of their procedural defects,[15] but in the

interests of expediting the case, chose not to require strict adherence. Regardless, the

cumulative and consistent tardiness of Attorney Osborn clearly establishes a history of

dilatoriness that weighs in favor of dismissal.

*(4) Whether the Conduct of the Party or the Attorney was Willful or in Bad Faith*

Having established that Attorney Osborn neglected his obligations under the CMO

and, consequently, Rule 25(a), the Court must determine whether Attorney Osborn's

conduct was willful or in bad faith.

---

Order, the undersigned reminded Attorney Osborn of his obligations to comply with not only the Federal Rules of
Civil Procedure, but also the Local Rules.

[15] To be clear, none of Plaintiff's motions was ever accompanied by a Certificate of Concurrence or a
Proposed Order, except for Plaintiff's Motion to Postpone Case Management Conference (Doc. 25), which did
contain a Proposed Order but no Certificate of Concurrence. Conversely, Defendant has always complied with
every rule, Federal and Local, that governs this case.

At the risk of repeating itself, the Court finds that Attorney Osborn was aware of what his obligations were, but failed to meet them.

> Mr. Osborn was a member of the Plaintiffs' Steering Committee (PSC) (DE 87) at the time the CMO was entered on July 28, 2006 (DE 89). As a member of the PSC, Mr. Osborn is knowledgeable of the requirements set forth in the CMO, the intent/purpose of those requirements, and his obligation to comply with those requirements.

*Spiese,* 2013 WL 2317743, at *4.[16] He has attempted to attribute his negligence and his constant need for additional time to his substantial caseload. For instance, in his most recent Motion for Extension of Time, he stated:

> lead counsel, Daniel A. Osborn, currently has deadlines in a number of other matters, including, but not limited to, (1) a deadline of August 31, 2013 for fact discovery in approximately 69 cases currently pending in the Aredia/Zometa multi-district litigation in the Middle District of Tennessee, 06-md-1760 ("MDL 1760"); (2) a deadline of September 16, 2013 for fact discovery in approximately 10 Aredia/Zometa cases currently pending in New Jersey State court; (3) responses to several other Rule 25 motions filed by defendant in MDL 1760; and (4) plaintiff's opposition to defendant's motion for summary judgment in the case of *Hendrix v. Novartis,* Case No. 2:13-cv-02402 (MWF), currently pending in the Central District of California.

(Doc. 71).

Attorney Osborn knew what his caseload was and should have known what resources diligent pursuit of these cases would require of him. His decision to take on a

---

[16] *In re Aredia and Zometa Products Liability Litigation (Cole),* No. 3:06-MD-01760 (M.D. Tenn. June 10, 2013) (Doc. 68-12, Ex. 12) ("As a member of the [Plaintiff's Steering Committee] . . . Mr. Osborn is aware of the CMO requirements, the intent/purpose of those requirements, and his obligation to comply with them. Given Mr. Osborn's knowledge of the requirements under the CMO, fault must accrue to him for his failure to comply with those requirements.").

high-volume and apparently unmanageable caseload must have been known to him, and to the extent it was knowing, it was willful.

### (5) The Effectiveness of Sanctions Other Than Dismissal

Dismissing a case with prejudice for repeated failures to meet deadlines or to comply with court orders is never a favored approach. Nevertheless, both this Court and the MDL Court provided several warnings to Attorney Osborn about his lack of compliance with the CMO, Rule 25(a), and the Local Rules. In light of these consistent and repeated failures, the Court concludes that less drastic sanctions are inadequate. Attorney Osborn's neglect "in this case has burdened the Court, strained scarce court resources, delayed disposition of this case, and prejudiced Defendant." *Spiese*, 2013 WL 2317743, at *6.

### (6) The Meritoriousness of the Claim or Defense

Despite having not yet ruled on the pending *Daubert* motions, the Court recognizes that Linda Wallace may have had a viable claim that the drugs (Aredia/Zometa) she took while battling breast cancer may have caused osteonecrosis of the jaw. Yet, Attorney Osborn's complete failure to remain up-to-date with developments in his clients' lives and this case compels the Court to find that dismissal outweighs any merit this case may have.

## IV. Conclusion

Finally, this Court is not the first to find that this action should be dismissed for failure to substitute the "proper party" under applicable state law, for violating Rule 25(a), and for violating the terms of the MDL's CMO. *See, e.g., Blumenshine v. Novartis Pharms. Corp.*,

No. 08-0567-CV-W-SOW (W.D. Mo. July 23, 2013) (Doc. 68-10, Ex. 10); *In re Aredia and Zometa Products Liability Litigation (Cole)*, No. 3:06-MD-01760 (M.D. Tenn. June 10, 2013) (Doc. 68-12, Ex. 12); *Carter v. Novartis Pharms. Corp.*, No. 4:12-CV-605-DPM (E.D. Ark. June 4, 2013) (Doc. 73-5, Ex. E); *In re Aredia and Zometa Products Liability Litigation (Spiese)*, No. 3-06-MD-1760, 2013 WL 2317743 (M.D. Tenn., May 28, 2013); *In re Aredia and Zometa Products Liability Litigation (K. Wilson)*, No. 3:06-MD-01760 (M.D. Tenn. May 13, 2013) (Doc. 68-11, Ex. 11); *see also Jacqueline Wilson v. Novartis Pharms. Corp.*, No. 4:12-CV-684-A, 2013 WL 593895, at *3 (N.D. Tex. Feb. 15, 2013); *McDaniel v. Novartis Pharms. Corp.*, No 2:08-CV-02088, 2012 WL 32608 (W.D. Ark. Jan. 6, 2012).[17]

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss (Doc. 67). As a result, Defendant's pending *Daubert* motions are moot. A separate Order follows.

Robert D. Mariani
United States District Judge

---

[17] Attorney Osborn or a member of his firm was the plaintiff's counsel of record in *Cole*, *Carter*, *Spiese*, *K. Wilson*, and *J. Wilson*. Considering that *McDaniel* was the earliest case in which Novartis discovered that an improper Rule 25 substitution had occurred, there is even stronger evidence that Novartis did not waive its rights with respect to Attorney Beatie's improper Rule 25 substitution motion in *this* case.